**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

RUTH A. GREER,                          )
                                        )
                    Plaintiff,          )
                                        )
          v.                            )          1:14CV00143
                                        )
CAROLYN W. COLVIN,                      )
Acting Commissioner of Social           )
Security,                               )
                                        )
                    Defendant.          )

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Ruth A. Greer, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 2.) The Court has before it the certified administrative record (manually filed and cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 10, 12; see also Docket Entry 11 (Plaintiff's Brief); Docket Entry 13 (Defendant's Memorandum)). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

**I.  PROCEDURAL HISTORY**

Plaintiff applied for SSI, alleging a disability onset date of March 1, 2008. (Tr. 168-71.) Upon denial of that application initially (Tr. 27, 165-67) and on reconsideration (Tr. 158-61),

Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 155-57). Plaintiff, her attorney, a medical expert ("ME"), and a vocational expert ("VE") attended the hearing. (Tr. 1173-1202.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 12-26.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 9-11), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] has not engaged in substantial gainful activity since March 24, 2009, the application date.

2. [Plaintiff] has the following severe impairments: chronic obstructive pulmonary disease ("COPD"), mild degenerative disc disease, hypothyroidism, chronic pain syndrome, bipolar disorder, and personality disorder.

. . .

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

4. [Plaintiff] has the residual functional capacity to perform less than the full range of light work . . . with mental and environment limitations.

[Plaintiff] can stand[]or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; and lift and/or carry 10 pounds frequently and 20 pounds occasionally. She is limited to performing simple, routine, repetitive tasks. She must avoid exposure to pulmonary irritants.

. . .

5.    [Plaintiff] has no past relevant work.

. . .

9.    Considering [Plaintiff's] age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [she] can perform.

. . .

10.    [Plaintiff] has not been under a disability, as
defined in the [] Act, since March 24, 2009, the date the
application was filed.

(Tr. 17-26 (bold font and internal parenthetical citations
omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits."  Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
Even given those limitations, the Court should remand this case for
further administrative proceedings.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead,
the Court "must uphold the factual findings of the ALJ if they are
supported by substantial evidence and were reached through
application of the correct legal standard."  Hines, 453 F.3d at 561

3

(internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

4

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of

_____

[1] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as
(continued...)

6

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

## B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

---

[3] (...continued)
"nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

1) "[t]he ALJ's finding that [Plaintiff] is capable of light work was not supported by substantial evidence" (Docket Entry 11 at 2);

2) "[t]he ALJ erred by failing to develop the record and by showing impermissible bias in favor of denying [Plaintiff's] claim" (id. at 16); and

3) "[t]he ALJ erred by posing a hypothetical question that did not take into account all of [Plaintiff's] non-exertional impairments" (id. at 18).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 3-11.)

## 1. RFC

In Plaintiff's first issue on review, she asserts that substantial evidence fails to support the ALJ's light-exertion RFC. (Docket Entry 11 at 2-15.) In particular, Plaintiff contends that, due to a long history of severe chest pain and shortness of breath caused by her COPD, "the thought of [Plaintiff] walking six hours a day, lifting 20 pounds up to a third of a day, and lifting 10 pounds up to two-thirds of a day is simply unimaginable." (Id. at 14.) Additionally, Plaintiff argues that the ALJ's failure to discuss pulmonary function testing ("PFT") conducted in June 2008 and showing "severely impaired diffusion capacity" (Tr. 947) constitutes a separate "basis for reversal" (Docket Entry 11 at 14). Lastly, Plaintiff maintains that the testimony of the ME, Dr.

8

Mitchell S. Collman, does not constitute substantial evidence to support the ALJ's light-exertion RFC, because Dr. Collman admitted on cross-examination that Plaintiff "cannot do . . . *all* of the walking, lifting, carrying, etc., required for light work." (Id. at 15 (italics in original).) Plaintiff's contentions lack merit.

As an initial matter, Plaintiff's statement that, "because this case was decided at step five, the Commissioner had the burden of going forward with evidence that [Plaintiff] has the RFC for light work" (id. at 3) constitutes a misstatement of the law. Plaintiff shouldered the burden of proving her RFC, and the Commissioner bore "the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy." See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); see also Clarification of Rules Involving Residual Functional Capacity Assessments; Clarification of Use of Vocational Experts and Other Sources at Step 4 of the Sequential Evaluation Process; Incorporation of "Special Profile" Into Regulations, 68 Fed. Reg. 51153-01, 51155 (Aug. 26, 2003) ("[The claimant] shoulder[s] the dual burdens of production and persuasion through step 4 of the [SEP]. Although [the claimant] generally bear[s] the burden of proving disability throughout the [SEP], there is a limited shift in the burden of proof to [the Commissioner] only if the [SEP] proceeds to the fifth step. . . . When [the Commissioner] decide[s] that [the claimant] [is] not disabled at

step 5, this means that [the Commissioner] ha[s] determined that there is other work [the claimant] can do.  To make this finding, [the Commissioner] must provide evidence that demonstrates that jobs exist in significant numbers in the national economy that [the claimant] can do, given [his or her] RFC, age, education, and work experience.  In legal terms, this is a burden of production of evidence.  This burden shifts to [the Commissioner] because, once [the claimant] establish[es] that [he or she] [is] unable to do any past relevant work, it would be unreasonable to require [him or her] to produce vocational evidence showing that there are no jobs in the national economy that [he or she] can perform. . . .  <u>That shift does not place on [the Commissioner] the burden of proving RFC</u>." (emphasis added)).

Turning to Plaintiff's principal RFC argument, the ALJ here supported his light-exertion RFC finding with substantial evidence.  The ALJ discussed Plaintiff's testimony and the objective medical evidence regarding her lung impairment in a fair degree of detail.  (<u>See</u> Tr. 19-23.)  The ALJ then found as follows:

> Ultimately, [Plaintiff's] statements concerning her impairments and their impact on her ability to work do not support a finding of disability, in light of [Plaintiff's] own description of her activities and lifestyle, the degree of medical treatment required, the reports of treating and examining practitioners, and the findings made on examination. Regarding [Plaintiff's] COPD, the evidence demonstrates that [Plaintiff's] condition can generally be controlled by prescribed medications. Exacerbations of [Plaintiff's] COPD occurred in the context of ongoing tobacco use, noncompliance with medications, and/or poly-substance

> use. Moreover, [Plaintiff] returned to baseline within
> less than 12 months.

(Tr. 23.) The ALJ also weighed the opinion evidence relating to Plaintiff's physical limitations (see Tr. 24), and gave "significant weight" to Dr. Collman's opinion that Plaintiff remained capable of performing light work but must avoid pulmonary irritants (id.; see also Tr. 1197-98). Consistent with that determination, the ALJ then gave "[l]imited weight" to the opinion of the state agency medical consultant, who opined that Plaintiff could perform medium work (see Tr. 766), because "the evidence received at the hearing level demonstrates that [Plaintiff] ha[d] greater exertional limitations" (Tr. 24). The ALJ thus supported his RFC determination with substantial evidence.

Although Plaintiff faults the ALJ for failing to expressly discuss Plaintiff's PFT from June 2008 (see Docket Entry 11 at 5, 13-14; see also Tr. 546), "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision,'" Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)). The record contains hundreds of medical records pertaining to Plaintiff's March 2008 hospitalization for exacerbation of her lung condition and her protracted recovery (see Tr. 265-479, 482-90), and the ALJ adequately summarized Plaintiff's course of treatment (see Tr. 19-20). Moreover, the ALJ clearly discussed Plaintiff's 2009 and 2010 PFT (see Tr. 23; see also Tr.

700-02, 755-64), which showed improved lung function as compared to her June 2008 PFT (compare Tr. 546, with Tr. 701-02, 756-63), and supported the ALJ's assessment that Plaintiff's lung condition returned to baseline within 12 months of any exacerbation (see Tr. 23). Thus, Plaintiff has not shown how the ALJ's express reference to the June 2008 PFT would have changed the RFC or the ultimate outcome of the case. (See Docket Entry 11 at 2-15.)

Plaintiff additionally contends that "[t]he ALJ failed to mention" that a September 2009 PFT conducted by Dr. M.A. Samia at a consultative examination "assessed [Plaintiff] as easily fatigued and short of breath on exertion" and "stated that the report showed mild to moderate obstruction" when "the report does not actually say this." (Id. at 8 (citing Tr. 23, 700).) However, in a related footnote, Plaintiff makes clear that she does not contend that the ALJ misstated the PFT report but, rather, that the record lacked the pages from Dr. Samia's report that reflected the assessment of "mild to moderate obstruction." (See id. n.5 (citing Tr. 699-704).) Plaintiff asserts that the omission of those pages "itself is ground for remand." (Id. at 8.)

Although the record evidently does not contain several pages of Dr. Samia's narrative report (compare Tr. 699, with Tr. 700; see also Tr. 23 (reflecting ALJ's summarization of Dr. Samia's findings, many of which do not appear on any of the pages of Dr. Samia's report in the record)), the absence of those pages does not

12

require a remand under the circumstances presented. "[T]o reverse on [such] grounds, the court must find that the plaintiff has been harmed because of the error" and "[t]he burden of showing that the harm resulted from the error . . . rests with the plaintiff." Santiago v. Astrue, No. 3:10-CV-0937 CFD TPS, 2011 WL 4460286, at *3 (D. Conn. Mar. 15, 2011) (unpublished), recommendation adopted, 2011 WL 4460206 (D. Conn. Sept. 27, 2011) (unpublished) (citing Shinseki v. Sanders, 556 U.S. 396, 410 (2009)). Here, despite counsel for Plaintiff's involvement in the case since at least March 10, 2010 (see Tr. 162-63), the record fails to reflect any effort by Plaintiff or her counsel to obtain the missing pages of Dr. Samia's report, to demonstrate that the missing pages omit the findings the ALJ described (see Tr. 23), or to otherwise show how the missing pages could have affected the outcome. Moreover, as discussed above, given the substantial record support for the ALJ's finding of improvement in Plaintiff's lung impairment in 2009 and 2010, Plaintiff has not shown how further consideration of Dr. Samia's 2009 report could favorably impact her case. Santiago, 2011 WL 4460286, at *3 (finding no reversible error despite the plaintiff's claim of missing medical records where "[t]he plaintiff has not explained how the missing records have caused him to be harmed" and "has also failed to explain what value the missing records might have on this case").

13

Lastly, contrary to Plaintiff's assertions (see Docket Entry 11 at 15), the ME did not testify that Plaintiff lacked the capacity to perform all of the requirements of light work. Rather, Dr. Collman testified that, although Plaintiff could not do all of the requirements of medium work, she could perform light work, and that he would recommend Plaintiff engage in some walking, lifting, and carrying if she pursued pulmonary rehabilitation. (See Tr. 1197-98.)

In conclusion, Plaintiff's first assignment of error fails to warrant relief.

## 2. Failure to Develop the Record

Next, Plaintiff asserts that the ALJ erred by failing to fulfill his duty to develop the record. (See Docket Entry 11 at 16-18.) More specifically, Plaintiff contends that, because the ALJ "rejected" the opinions of post-hearing consultative examiner Dr. Elliott Sharon, the ALJ's duty to develop the record compelled him to "replace [Dr. Sharon's opinion] with a credible expert's explanation of [Plaintiff's] condition and its severity." (Id. at 16.) Plaintiff further faults the ALJ for "question[ing] [ME] Dr. Collman no more than was necessary to establish that [Plaintiff] failed to meet a listing" and, in particular, for failing to "ask Dr. Collman to interpret the PFT of March 5, 2010." (Id. at 17.) Plaintiff's contentions lack merit.

"[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173-74 (4th Cir. 1986) (emphasis added) (citations omitted). The ALJ discharges his duty to develop the record where "the record is adequate to make a determination regarding a disability claim." France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. 2000); accord Kersey v. Astrue, 614 F. Supp. 2d 679, 693 (W.D. Va. 2009). Accordingly, in order to demonstrate that the ALJ failed to develop the record, a claimant must show that "evidentiary gaps" existed that prejudiced his or her rights, Blankenship v. Astrue, No. 3:11-cv-00005, 2012 WL 259952, at *13 (S.D.W. Va. Jan. 27. 2012) (unpublished) (citing Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980)), and that he or she "could and would have adduced evidence that might have altered the result,'" id. (quoting Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000)).

The ALJ in this case fulfilled his duty to develop the record. Plaintiff cites no authority for the proposition that, upon discounting the opinions of the post-hearing consultative examiner, the ALJ's duty to develop the record compelled him to order a new consultative examination. (See Docket Entry 11 at 16.) Indeed, the ALJ's decision to afford "little weight" to Dr. Sharon's opinions as inconsistent with the record (Tr. 24) does not mean

15

that Dr. Sharon's objective <u>findings</u> and <u>diagnoses</u> had no value to the ALJ (<u>see</u> Tr. 23 (ALJ's discussion of Dr. Sharon's findings and diagnoses)), or imply that Dr. Sharon's report lacked clarity or completeness.  Moreover, the ALJ relied on the opinions of the ME at the hearing to guide the ALJ's determinations regarding whether Plaintiff's lung impairment met or equaled any of the listed impairments (<u>see</u> Tr. 17) and regarding Plaintiff's RFC (<u>see</u> Tr. 24).  Thus, contrary to Plaintiff's assertion, the ALJ clearly did not "settle for his own layman's estimate of the case rather than obtain a credible medical opinion."  (Docket Entry 11 at 16.)

Moreover, the ALJ did not commit error with regard to his questioning of the ME at the hearing.  Although Plaintiff faults the ALJ for ending his questioning once Dr. Collman opined that Plaintiff's lung impairment did not meet or equal any listings (<u>see</u> <u>id.</u> at 17; <u>see also</u> Tr. 1197), Plaintiff's counsel cross-examined Dr. Collman and elicited his opinion that Plaintiff remained capable of light work and should avoid pulmonary irritants (<u>see</u> Tr. 1197-98).  If Plaintiff believed that the circumstances warranted further lines of questioning of Dr. Collman, her counsel could have asked Dr. Collman those questions at the hearing.  Similarly, Plaintiff challenges the ALJ's failure to ask Dr. Collman to "interpret the PFT of March 5, 2010" (Docket Entry 11 at 17), but neither the ALJ nor Dr. Collman indicated that the data from the PFT needed any further interpretation (<u>see</u> Tr. 1197).  Plaintiff's

16

counsel had the opportunity to ask Dr. Collman to interpret or explain the PFT data and failed to do so. (See Tr. 1197-98.)

Under these circumstances, Plaintiff's argument that the ALJ did not fulfill his duty to develop the record fails as a matter of law.

### 3. Hypothetical Question

In Plaintiff's final issue on review, she argues that the ALJ's hypothetical question to the VE failed to include several of Plaintiff's non-exertional limitations. (Docket Entry 11 at 18-22.) More specifically, Plaintiff asserts that the ALJ failed to include in the hypothetical any limitations due to her chronic pain, shortness of breath, need for 30-minute breaks for breathing treatments, and moderate limitation in concentration, persistence, or pace. (Id.) With regard to the latter limitation, Plaintiff contends that the ALJ's inclusion of simple, routine, repetitive tasks in the RFC does not sufficiently account for Plaintiff's moderate limitation in concentration, persistence, or pace. (Docket Entry 11 at 21-22 (citing Tr. 18, 1199).) Plaintiff's allegations concerning her pain, shortness of breath, and need for breaks lack merit, but her contention with regard to her moderate limitation in concentration, persistence, or pace warrants remand.

Plaintiff's assertion that the ALJ's hypothetical question to the VE lacked any limitations due to her chronic pain and shortness of breath falls short. Here, the ALJ fully analyzed Plaintiff's

17

subjective complaints of pain and shortness of breath under 20 C.F.R. § 416.929, including by considering the objective medical evidence, Plaintiff's testimony about those symptoms, and evidence of her daily activities. (Tr. 19-24.) The ALJ thereafter found Plaintiff's subjective symptom reporting "not entirely credible" (Tr. 23), a finding not specifically challenged (see Docket Entry 11 at 2-22), which the Court should deem supported by substantial evidence. Moreover, the ALJ limited Plaintiff to light work (which involves lifting and carrying of no more than 20 pounds, see 20 C.F.R. § 416.967(b)) and precluded exposure to pulmonary irritants (see Tr. 19), which accommodated Plaintiff's complaints of pain and shortness of breath, to the extent the ALJ credited those complaints. Under these circumstances, the ALJ's failure to further limit Plaintiff's RFC because of alleged pain and shortness of breath does not constitute error. See Stallworth v. Commissioner of Soc. Sec., No. 1:12cv496, 2013 WL 2897879, at *10 (S.D. Ohio Jun. 13, 2013) (unpublished) (finding ALJ's failure to include additional RFC limitations based on pain fell within ALJ's "zone of choice" because supported by substantial evidence).

Plaintiff's argument that the ALJ "also failed to account for [Plaintiff's] time-consuming use of breathing devices" in the hypothetical question similarly fails. (Docket Entry 11 at 20.) Plaintiff testified as follows regarding her need for daily breathing treatments:

18

> When I get up, you know, first thing in the morning and
> I get up around 7:30/8:00 I've got to take the breathing
> treatment. And then about 12:00/1:00 is the time I take
> another one. And then right at night, before I go to
> bed, I have to take another one and that varies between
> 8:30 and 9:00.

(Tr. 1188.) The VE testified that the jobs he cited in response to the hypothetical question did not constitute production jobs, and that employees can take "morning and afternoon breaks and then a lunch break." (Tr. 1200.) As Defendant argues (see Docket Entry 13 at 8), Plaintiff has thus not shown why she could not take her morning and evening breathing treatments outside of the work day, and use her midday lunch break for the noon breathing treatment. Under such circumstances, the ALJ did not err by omitting Plaintiff's alleged need for breaks for breathing treatments from the hypothetical question. See Burton v. Astrue, 310 F. App'x 960, 963 (9th Cir. 2009) (finding no error in ALJ's hypothetical question where the claimant had not "shown why he would not be able to use his nebulizer on regularly scheduled breaks").

Regarding Plaintiff's concentration, persistence, and pace, after the ALJ issued his decision and the parties completed their briefing before this Court, the United States Court of Appeals for the Fourth Circuit decided Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), which directly addressed the relationship between a moderate limitation in concentration, persistence, or pace and the inclusion of simple, routine, repetitive tasks and/or unskilled work in the

19

RFC and hypothetical question(s).  Id. at 638.  In Mascio, the
Fourth Circuit held as follows:

> [W]e agree with other circuits that an ALJ does not
> account "for a claimant's limitations in concentration,
> persistence, and pace by restricting the hypothetical
> question to simple, routine tasks or unskilled work."
> Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180
> (11th Cir. 2011) (joining the Third, Seventh, and Eighth
> Circuits).  As Mascio points out, the ability to perform
> simple tasks differs from the ability to stay on task.
> Only the latter limitation would account for a claimant's
> limitation in concentration, persistence, or pace.
>
> Perhaps the ALJ can explain why Mascio's moderate
> limitation in concentration, persistence, or pace at step
> three does not translate into a limitation in Mascio's
> [RFC].  For example, the ALJ may find that the
> concentration, persistence, or pace limitation does not
> affect Mascio's ability to work, in which case it would
> have been appropriate to exclude it from the hypothetical
> question tendered to the [VE].  See id. at 1181.  But
> because the ALJ here gave no explanation, a remand is in
> order.

Id.

> As a neighboring court recently explained:

> Mascio does not broadly dictate that a claimant's
> moderate impairment in concentration, persistence, or
> pace always translates into a limitation in the RFC.
> Rather, Mascio underscores the ALJ's duty to adequately
> review the evidence and explain the decision . . . .  An
> ALJ may account for a claimant's limitation with
> concentration, persistence, or pace by restricting the
> claimant to simple, routine, unskilled work where the
> record supports this conclusion, either through physician
> testimony, medical source statements, consultative
> examinations, or other evidence that is sufficiently
> evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D.
Va. Aug. 20, 2015) (Magistrate Judge's Report & Recommendation
adopted by District Judge) (unpublished) (emphasis added); see also

20

Hutton v. Colvin, No. 2:14-CV-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced" and that ALJ "gave abundant explanation" for why unskilled work adequately accounted for claimant's moderate limitation in concentration, persistence, or pace, where ALJ relied on the claimant's daily activities and treating physicians' opinions of claimant's mental abilities).

Here, the ALJ's decision provides no explanation as to why a limitation to "simple, routine, repetitive tasks" (Tr. 18) sufficiently accounted for Plaintiff's moderate limitation in concentration, persistence, or pace (see id.). The ALJ's explanation for finding a moderate limitation in concentration, persistence, or pace, i.e., that "[Plaintiff] is limited to simple, routine, repetitive tasks, due to her bipolar and personality disorders" (id.), merely reiterates the ALJ's mental RFC and does not explain why Plaintiff's moderate concentration deficits did not translate into any other limitations in the RFC. Although the ALJ gave "[s]ignificant weight" to the state agency psychological consultant's opinion that "[Plaintiff] was capable of . . . performing simple tasks" (Tr. 24 (citing Tr. 737-40)), that same consultant noted that Plaintiff "may have some difficulty maintaining attention and concentration" (Tr. 739 (emphasis added)). As a result, without further explanation, the ALJ's crediting of the state agency psychological consultants' opinions

21

does not provide a "logical bridge," <u>Clifford v. Apfel</u>, 227 F.3d 863, 872 (7th Cir. 2000), between the ALJ's findings that Plaintiff suffered moderate concentration deficits <u>and</u> that Plaintiff could perform simple, routine, repetitive tasks, without any further concentration-related restriction. Moreover, the ALJ did not address Plaintiff's concentration deficits <u>at all</u> in his RFC discussion. (<u>See</u> Tr. 19-25.)

In sum, the ALJ's failure to explain why a restriction to simple, routine, repetitive tasks in the RFC adequately accounted for Plaintiff's moderate limitation in concentration, persistence, or pace runs afoul of <u>Mascio</u> and requires a remand.

### III. CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) be granted in part (i.e., to the extent it requests remand), that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be denied, and that this matter be remanded for further administrative proceedings as to why, for purposes of establishing an RFC, restricting Plaintiff to simple, routine, repetitive tasks adequately accounts for her moderate limitation in concentration, persistence, or pace (or, alternatively, whether additional restrictions should apply and/or

whether jobs that can accommodate any such additional restrictions exist in substantial numbers).


                              _____
                                   /s/ L. Patrick Auld
                                  **L. Patrick Auld**
                          **United States Magistrate Judge**


April 6, 2016